[Civ. No. 51753. Second Dist., Div. Two. Mar. 22, 1978.]

ASSOCIATED CALIFORNIA LOGGERS, INC., et al.,
Plaintiffs and Respondents, v.
WESLEY J. KINDER, as Insurance Commissioner, etc.,
Defendant and Appellant.

## COUNSEL

Evelle J. Younger, Attorney General, and Raymond B. Jue, Deputy Attorney General, for Defendant and Appellant.

McDonough, Holland, Schwartz & Allen, Barger & Wolen, Kent Keller and J. Stephen Britt for Plaintiffs and Respondents.

## OPINION

**COMPTON, J.**—The Insurance Commissioner of the State of California appeals from an order of the trial court granting a preliminary injunction in an action brought against him by two business associations, Associated California Loggers, Inc. (ACL) and California State Builders Exchange, Inc. (CSBE). The third plaintiff Builders Exchange Service is an adjunct of CSBE and will be included in our reference to CSBE.

ACL is a nonprofit association of 350 persons or organizations engaged in the logging industry. CSBE is a similar association of 5,000 persons or organizations in the building industry. One of the services which these associations provide to their members is a program of insurance including worker's compensation issurance.

Members of both associations obtained the latter type of coverage from Employer's Benefit Ins. Co. (EBI). Collaterally both associations contracted to provide EBI with administrative services such as the billing and collecting of premiums on the various policies and the maintaining of an extensive safety program. For these services ACL and CSBE are reimbursed for the amount of actual costs not to exceed a certain percentage of the premiums.

In September of 1976, the commissioner issued an accusation against EBI alleging, inter alia, that by virtue of the above referenced service agreements EBI had violated Insurance Code section 755 which prohibits payment of a commission or other consideration on insurance business to other than a qualified insurer, agent or broker.

The accusation declared the intent of the commissioner to suspend EBI's authority to transact workers' compensation insurance business in California and to cancel all policies of insurance between EBI and the two associations.

Representatives of CSBE and EBI appeared before the commissioner and urged that the accusation be withdrawn. They presented their cost figures in connection with the service agreement and contended that the agreements were not violative of the Insurance Code.

The commissioner was unpersuaded and thereafter issued a cease and desist order. EBI for reasons of its own did not contest the order but instead notified ACL and CSBE that because of the commissioner's actions, it was terminating their service agreements 60 days hence. The commissioner abandoned further proceedings against EBI.

ACL and CSBE then commenced this action for declaratory and injunctive relief, naming the commissioner and EBI as defendants. The temporary injunction at issue here, prevents the commissioner from ordering termination of the agreements and EBI from terminating the agreements pending trial of the action.

At this juncture we review only the trial court's exercise of discretion in preserving the status quo until a trial on the merits. That exercise of discretion initially involves a balancing of the equities and hardships in light of a determination as to the reasonable probability of whether plaintiffs can ultimately prevail. (*California State University, Hayward* v. *National Collegiate Athletic Assn.*, 47 Cal.App.3d 533 [121 Cal.Rptr. 85];

*State Bd. of Barber Examiners* v. *Star,* 8 Cal.App.3d 736 [87 Cal.Rptr. 450].)

ACL and CSBE presented substantial evidence to the trial court to establish that termination of the agreements will result in the cessation of elaborate administrative and safety programs with an attendant discharge of employees and economic loss. On the other hand, a temporary stay of the commissioner's hand would not appear to threaten any serious harm to the commissioner or the public. In this connection then the balance is in favor of the trial court's order.

The parties in their briefs have given extensive treatment to the subject of whether the service agreements in fact violate the Insurance Code. The commissioner contends that the fees paid by EBI to the plaintiff associations are unlawful rebates or in the alternative they reduce the premium paid by the insureds below the legally permissible rate, citing Insurance Code sections 750,[1] 751,[2] 755,[3] 11736.[4]

For their part, ACL and CSBE argue that they are performing actual services at a reasonable rate and since these services would have to be performed by someone at a cost to EBI, the simple fact that ACL and CSBE receive insurance coverage from EBI should not make the agreements illegal.

As noted, we do not here decide the ultimate issue framed by these two conflicting positions. We determine only that at this point the law and the evidence suggests a reasonable probability that ACL and CSBE will prevail. At least the trial court's determination that that is the case

---

[1]Insurance Code section 750 provides: "An insurer, insurance agent, broker, or solicitor, personally or by any other party, shall not offer or pay, directly or indirectly, as an inducement to insurance on any subject-matter in this State, any rebate of the whole or part of the premium payable on an insurance contract, or of the agent's or broker's commission thereon, and such rebate is an unlawful rebate."

[2]Insurance Code section 751 provides: "An insurer, or an insurance agent, broker, or solicitor, personally or otherwise, shall not offer to pay, directly or indirectly, as an inducement to enter into an insurance contract, any valuable consideration which is not clearly specified, promised or provided for in the policy, or application for the insurance, and any such consideration not appearing in the policy is an unlawful rebate."

[3]Insurance Code section 755 provides: "The paying or allowing of any commission or other valuable consideration on insurance business in this State to other than an admitted insurer or a licensed insurance agent, broker or solicitor is an unlawful rebate."

[4]Insurance Code section 11736 provides in part: "An insurer shall not issue, renew or continue in force any workers' compensation insurance under a law of this state . . . at premium rates which are less than the rates approved or issued by the commissioner. The effective date of such rates shall be the date fixed by the commissioner; . . ."

was well within the parameters of sound discretion. (See 2 Witkin, Cal. Procedure (2d ed. 1970) Provisional Remedies, § 80, pp. 1518-1519.)

■ Thus we turn our attention to what appears to us to be the critical issue at this time and the one on which the commissioner has advanced his strongest argument, i.e., the issue of the standing of ACL and CSBE to enjoin the action of the commissioner and the attendant principle of exhaustion of administrative remedies.

The commissioner's action vis-à-vis EBI are predicated on his power to suspend the certificate of authority of an insurer upon a violation by the insurer of any of the provisions of the code (Ins. Code, § 765).

The exercise of that power must be preceded by notice and hearing under the provisions for administrative adjudication as set forth in Government Code section 11500 et seq. Judicial review generally is in the nature of administrative mandamus. (Code Civ. Proc., § 1094.5.)

A corollary power granted to the commissioner is found in Insurance Code section 12928.5 which authorizes him to require the cancellation of any contract of insurance which could provide a basis for the exercise of his power under Insurance Code section 765. This power may be exercised in lieu of suspension or revocation of the insurer's authority. That is what occurred here.

Insurance Code section 12928.5 contains no specific provision for an administrative hearing or judicial review of the commissioner's order. It seems clear, however, that EBI would have had available to it the machinery for administrative adjudication and administrative mandamus had it elected to contest the commissioner's order.

Inasmuch as EBI capitulated to the commissioner's decision, the issue becomes one of whether the ACL and CSBE, who are both affected by the decision, can obtain judicial review and, if so, in what form.

Because of the nature of the statutory scheme the commissioner's exercise of his regulatory authority necessarily is directed against the members of the insurance industry. Essentially the commissioner's contention that ACL and CSBE do not have "standing" to challenge his order is premised on the claim that only EBI had such "standing" and that since EBI did not exhaust its administrative remedy, further judicial review is foreclosed.

"The acts and orders of the commissioner are subject to such review, or other action by a court of competent jurisdiction, as is permitted or authorized by law." (Ins. Code, § 12940.)

In two rather recent decisions the federal courts have upheld the right of affected third parties to challenge administrative action where the economic interests of those persons were involved. In *Data Processing Service* v. *Camp*, 397 U.S. 150 [25 L.Ed.2d 184, 90 S.Ct. 827], sellers of data processing equipment were found to have standing to challenge a ruling of the Comptroller of the Currency allowing national banks to offer data processing services in competition with plaintiffs and in *Barlow* v. *Collins*, 397 U.S. 159 [25 L.Ed.2d 192, 90 S.Ct. 832], a group of farmers had standing to challenge an administrative ruling on restrictions on financial institutions, which ruling affected plaintiffs' ability to obtain financing.

The commissioner correctly points out that these cases were governed by a federal statute (5 U.S.C. § 702) which authorizes a person "suffering a legal wrong because of agency action" to obtain judicial review. The commissioner however, suggests that California has no such statute.

Interestingly enough the commissioner concedes that those cases do provide "a general guideline" to the analysis of the standing issue. That "guideline" according to the commissioner consists of a two-pronged test, citing *United States* v. *SCRAP*, 412 U.S. 669 [37 L.Ed.2d 254, 93 S.Ct. 2405].

The two-pronged test is (1) did the challenged action cause the party injury in fact and (2) was the interest sought to be protected within the "zone of interest" to be protected or regulated by the statute that the agency was said to have violated?

According to the commissioner the plaintiffs here fail on the second "prong of the test." He suggests that plaintiffs here, while alleging injury in fact, fail to bring their claim within the "zone of interest" to be protected by the applicable insurance laws of California.

This strikes us as a self-defeating argument. It raises the question that if the contracts at issue are not within the "zone of interest" to be protected or regulated by the insurance laws by what authority does the commissioner purport to order them cancelled?

Furthermore, it appears doubtful that the "zone of interest test" is the law. It has not been applied to bar standing in any of the "standing" cases decided by the United States Supreme Court since 1970. It has been generally ignored or disapproved by a large number of United States Court of Appeal cases. (See Davis, Administrative Law Treatise (1976 supp.) § 22.02-11, pp. 509-510.)

We think a better statement of the principle of standing is to be found in Davis, Administrative Law Treatise, *supra*, at page 486, where the following appears: "A very simple and natural proposition is entirely sound: One who is in fact adversely affected by governmental action should have standing to challenge that action, if it is judicially reviewable."

The commissioner in urging that EBI alone had "standing" concedes that the order under consideration is an action which is judicially reviewable. Coupling that concession with the obvious adverse effect on ACL and CSBE the requirements for standing would appear to be met.

Certain California constitutional and statutory provisions suggest that ACL and CSBE have invoked the proper procedure.

The Commissioner of Insurance is a state agency with the power to adopt regulations (Gov. Code, § 11371). Regulations are defined as every rule, regulation *or order of general application. "Any interested person may obtain a judicial declaration as to the validity of any regulation by bringing an action for declaratory relief . . . ."* (Gov. Code, § 11440.) (Italics added.)

While *it* appears that Government Code section 11371 et seq., including section 11440, have reference to the promulgation of policy through general rules and regulations, it is clear that the commissioner can effectively promulgate general policy by a series of accusations and administrative adjudications directed at individual insurers such as is the case at bench. (See *Securities Comm'n v. Chenery Corp.,* 332 U.S. 194 [91 L.Ed. 1995, 67 S.Ct. 1575]; Kaplan, *Administrative Law: Agency Authority To Develop Policy By Adjudication Rather Than Rule* (1948) 36 Cal.L.Rev. 619.)

In short, the commissioner, by invalidating these service contracts, is promulgating a rule which in effect prohibits providers of workers' compensation insurance from contracting to have administrative services

performed by the insured. Declaratory relief would seem to be the accepted and statutorily authorized method of testing the legality of such a policy.

Further, while all contracts of insurance in California are necessarily written with cognizance of the Insurance Code provisions and in contemplation of the state's exercise of its inherent police power (*Roach v. Hostetter*, 48 Cal.App.2d 375, 379 [119 P.2d 749]; *Mott* v. *Cline*, 200 Cal. 434 [253 P. 718]) the constitutional prohibition against impairment of contractual obligation implicitly requires the availability of judicial review of any order of cancellation issued by the commissioner. The unilateral decision or interpretation of the commissioner must be subject to judicial scrutiny. Declaratory relief is the traditional method by which parties to a contract can have their rights in the contract determined. (Code Civ. Proc., § 1060.)

We hold that ACL and CSBE have standing and are entitled to obtain judicial review of the commissioner's order and EBI's acquiescence thereto. This brings us squarely to the issue of whether plaintiffs are to be foreclosed from obtaining that judicial review because of a failure to exhaust administrative procedures.

■ Where an administrative remedy is provided by statute, relief must be sought from the administrative agency and the remedy exhausted before the courts will act to review the action of that administrative agency. (*Temescal Water Co.* v. *Dept. Public Works*, 44 Cal.2d 90 [280 P.2d 1].) The purpose of the requirement is to afford the agency an opportunity to exercise its discretion before being subjected to interference by the courts.

■ The requirement of exhaustion of administrative remedies does not serve to foreclose judicial review where the administrative remedy is inadequate or unavailable (*Martino* v. *Concord Community Hosp. Dist.*, 233 Cal.App.2d 51 [43 Cal.Rptr. 255]) or where irreparable injury will occur if the administrative order is made effective without prior judicial interference. (*Greenblatt* v. *Munro*, 161 Cal.App.2d 596 [326 P.2d 929].)

■ The commissioner contends that ACL and CSBE themselves had administrative remedies apart from those of EBI. This line of argument goes that even though EBI yielded to the commissioner's order, ACL and CSBE could have become "parties" to the administrative proceeding and

attempted to obtain a hearing pursuant to Government Code section 11500 et seq.

The basis for this assertion is that Government Code section 11500 defines "party" to include "any person . . . who has been allowed to appear in the proceeding." By adopting this apparently inconsistent position the commissioner does not answer the obvious question, i.e., if, as he contends, neither ACL or CSBE have "standing" to challenge the order in court, how could they expect to be allowed to appear in the administrative hearing to do just that? (See *Bodinson Mfg. Co.* v. *California E. Com.,* 17 Cal.2d 321 [109 P.2d 935].)

In 32 Ops.Cal.Atty.Gen. 297 (1959) the Attorney General stated that a state licensing agency—in that case the State Cemetery Board—was not required to consider the protest of persons who might be affected by the granting of a certificate of authority. He further stated that the "protestants could not become 'parties' " to the administrative proceedings. We see little difference between that situation and the situation of persons affected by the suspension or revocation of a "certificate of authority" to conduct insurance business.

While concepts of due process may suggest that affected third parties should be permitted to participate in administrative adjudication such as the type involved here the California statutes do not address the problem. (See 47 Cal.L.Rev. 747.) Clearly the fact that EBI did not exhaust its administrative remedies should not serve to bar ACL and CSBE from obtaining judicial review.

Neither the administrative adjudication procedures of the Government Code (§ 11500 et seq.) nor the relevant provision of the Insurance Code (§§ 12928.5, 765) contain any provision for the giving of notice of the commissioner's actions to affected persons nor do those sections delineate any procedure by which such persons can intervene in the administrative process.

In the case at bench the commissioner was requested to reconsider his position and was presented with the evidence upon which ACL and CSBE rely in claiming that the contracts are proper. He thus had an opportunity to exercise his discretion. His decision is now ripe for judicial review.

■ The remaining question is whether injunction is a proper remedy in view of the fact that Code of Civil Procedure section 526 and Civil Code section 3423 prohibit the issuance of an injunction "to prevent the execution of public statute by officers of the law for the public benefit."

Case law has recognized a number of exceptions to the proscription of these two statutes. Injunctions against official action have been approved where the statute being enforced was alleged to be unconstitutional (*Brock* v. *Superior Court,* 12 Cal.2d 605 [86 P.2d 805]), where the court found that the public official's action was not within the scope of the statute (*Pierce Ins. Co.* v. *Maloney,* 124 Cal.App.2d 501 [269 P.2d 57]) or where the public official's action exceeds his power (*Financial Indem. Co.* v. *Superior Court,* 45 Cal.2d 395 [289 P.2d 233]).

This case turns on the ultimate question of whether the insurance commissioner exceeded his power in ordering cancellation of the collateral service contract by the threatened use of his power to order cancellation of the insurance coverage itself or to suspend EBI's authority to conduct insurance business in California.

The contracts immediately affected are not, themselves, insurance contracts. As we have previously discussed, the constitutional prohibition against impairment of contractual obligations lends a constitutional dimension to the challenge to the commissioner's authority.

We have concluded that ACL and CSBE have the right to a judicial determination of the validity of the contracts. That right would be meaningless if the court lacked the power to preserve the status quo pending its ultimate decision in the matter.

Our conclusion is that Code of Civil Procedure section 526 and Civil Code section 3423 do not prohibit the issuance of an injunction under the circumstances of this case.

The order is affirmed.

Roth, P. J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 18, 1978.