[Civ. No. 57684. Second Dist., Div. Two. Sept. 26, 1980.]

ASSOCIATED CALIFORNIA LOGGERS, INC., et al.,
Plaintiffs and Respondents, v.
WESLEY J. KINDER, as Insurance Commissioner, etc.,
Defendant and Appellant.

674

COUNSEL

George Deukmejian, Attorney General, Arthur C. de Goede, Assistant Attorney General, and Raymond B. Jue, Deputy Attorney General, for Defendant and Appellant.

Barger & Wolen, Kent Keller, Stephen C. Klein and Paul E. Glad for Plaintiffs and Respondents.

OPINION

**COMPTON, J.**—In this action for declaratory and injunctive relief by two trade associations, Associated California Loggers, Inc. (ACL), and California State Builders Exchange, Inc. (CSBE), against the Commissioner of Insurance, we previously approved the trial court's order for the issuance of a preliminary injunction pending trial on the merits as to the validity of a cease and desist order which the commissioner had issued against a worker's compensation insurance carrier, Employee's Benefits Insurance Company (EBI).

After a trial on the merits the trial court entered judgment in favor of the plaintiffs and against the commissioner. The commissioner has again appealed.

We here incorporate the recitation of the background of this dispute as contained in our former opinion *Associated Cal. Loggers, Inc. v. Kinder* (1978) 79 Cal.App.3d 34, at pages 37, 38 [144 Cal.Rptr. 786].

"ACL is a nonprofit association of 350 persons or organizations engaged in the logging industry. CSBE is a similar association of 5,000 persons or organizations in the building industry. One of the services which these associations provide to their members is a program of insurance including worker's compensation insurance.

"Members of both associations obtained the latter type of coverage from Employee's Benefits Ins. Co. (EBI). Collaterally both associations contracted to provide EBI with administrative services such as the billing and collecting of premiums on the various policies and the maintaining of an extensive safety program. For these services ACL and CSBE are reimbursed for the amount of actual costs not to exceed a certain percentage of the premiums.

"In September of 1976, the commissioner issued an accusation against EBI alleging, inter alia, that by virtue of the above referenced service agreements EBI had violated Insurance Code section 755 which prohibits payment of a commission or other consideration on insurance business to other than a qualified insurer, agent or broker.

"The accusation declared the intent of the commissioner to suspend EBI's authority to transact workers' compensation insurance business in California and to cancel all policies of insurance between EBI and the two associations.

"Representatives of CSBE and EBI appeared before the commissioner and urged that the accusation be withdrawn. They presented their cost figures in connection with the service agreement and contended that the agreements were not violative of the Insurance Code.

"The commissioner was unpersuaded and thereafter issued a cease and desist order. EBI for reasons of its own did not contest the order but instead notified ACL and CSBE that because of the commissioner's actions, it was terminating their service agreements 60 days hence. The commissioner abandoned further proceedings against EBI. [¶] ACL and CSBE then commenced this action...."

In the court below plaintiffs offered substantial evidence to the effect that the payments they received for services rendered are reasonable and the trial court so found. The commissioner offered no evidence to the contrary.

Simply stated the commissioner's position is that the agreements violate public policy, are illegal per se and that any inquiry into the reasonableness of the fees is irrelevant. The commissioner refers us to a number of statutes which prohibit certain activities in the insurance field and contends that the service agreements in question violate these statutes.

As we will discuss, *infra*, those statutes have no application to these service agreements and while the commissioner attempts to argue that the agreements are merely a subterfuge to avoid the statutory prohibition, he offered no evidence of that fact and relied solely on the relationship of the parties to make his case.

The fundamental and inescapable fact is that EBI is required to bear the cost of billing and collecting the premiums for the insurance coverage. That cost could be met by the use of EBI's own employees or by contracting with an outside party for the performance of the service. The commissioner concedes the legality of the latter method of operation. He stoutly maintains, however, that the contracting party must be independent of the insureds and that the payments made to ACL and CSBE here being computed on a percentage of premiums, are unlawful rebates in violation of Insurance Code sections 750[1] and 751,[2] or unlawful commissions in violation of Insurance Code section 755,[3] or a reduction of premiums in violation of Insurance Code section 11736.[4]

---

[1]"An insurer, insurance agent, broker, or solicitor, personally or by any other party, shall not offer or pay, directly or indirectly, as an inducement to insurance on any subject-matter in this State, any rebate of the whole or part of the premium payable on an insurance contract, or of the agent's or broker's commission thereon, and such rebate is an unlawful rebate."

[2]"An insurer, or an insurance agent, broker, or solicitor, personally or otherwise, shall not offer or pay, directly or indirectly, as an inducement to enter into an insurance contract, any valuable consideration which is not clearly specified, promised or provided for in the policy, or application for the insurance, and any such consideration not appearing in the policy is an unlawful rebate."

[3]"The paying or allowing of any commission or other valuable consideration on insurance business in this State to other than an admitted insurer or a licensed insurance agent, broker or solicitor is an unlawful rebate."

[4]"An insurer shall not issue, renew or continue in force any workers' compensation insurance under a law of this state at premium rates which are less than the rates approved or issued by the commissioner. The effective date of such rates shall be the date fixed by the commissioner."

As we observed in our previous opinion, the commissioner was authorized by then Government Code section 11371 to adopt regulations of general application to the industry which he is authorized to regulate. We further noted that he can, as a practical matter, effectively promulgate policy by a series of administrative adjudications (which is what he apparently is attempting here) citing *Securities Comm'n. v. Chenery Corp.* (1947) 332 U.S. 194 [91 L.Ed. 1995, 67 S.Ct. 1575]; Kaplan, *Notes and Recent Decisions* (1948) 36 Cal.L.Rev. 619.

The significant issue in this case is the scope of judicial review. Although the issue was not raised by the briefs filed on behalf of the commissioner, the Attorney General, at oral argument, advanced the notion that the administrative proceeding in this case should be viewed as an adoption by the commissioner of a rule that agreements such as the one involved here will not be permitted.

This rule, according to the commissioner, is necessary to avoid a *potential* for violation of the prohibitions against rebates and unlawful rate reductions. He contends that such a rule is reasonably related to his authority to police the insurance industry, and the court should not attempt to substitute its judgment for that of the commissioner. (15 Ops.Cal.Atty.Gen. 265 (1950); *Ralphs Grocery Co. v. Reimel* (1968) 69 Cal.2d 172 [70 Cal.Rptr. 407, 444 P.2d 79].)

In *Securities Comm'n. v. Chenery Corp., supra,* at pages 196 and 197 [91 L.Ed at p. 1999], the court stated: "When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

"We also emphasized in our prior decision an important corollary of the foregoing rule. If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive."

court be expected to chisel that which must be precise from what the agency has left vague and indecisive."

In 1979, the California State Legislature repealed, effective July 1, 1980, chapter 4.5 of division 3 of the Government Code (§ 11371 et seq.) and replaced it with a new chapter 3.5 (§ 11340 et seq.).

That newly enacted chapter provided in section 11340 legislative findings, inter alia, "The Legislature finds and declares as follows: [¶] (a) There has been an unprecedented growth in the number of administrative regulations in recent years. [¶] (b) The language of many regulations is frequently unclear and unnecessarily complex, even when the complicated and technical nature of the subject matter is taken into account. The language is often confusing to the persons who must comply with the regulations. [¶] (c) Substantial time and public funds have been spent in adopting regulations, the necessity for which has not been established."

The ensuing sections contain an elaborate procedure for adoption of administrative rules and regulations which address these legislative findings. Government Code section 11350, providing for judicial review of administrative rules and regulations, provides in pertinent part: "(a) Any interested person may obtain a judicial declaration as to the validity of any regulation by bringing an action for declaratory relief in the superior court in accordance with the provisions of the Code of Civil Procedure. Such regulation may be declared to be invalid for a substantial failure to comply with the provisions of this chapter, . . .

"(b) In addition to any other ground which may exist, such regulation may be declared invalid if the court cannot find that the record of the rulemaking proceeding supports the agency's determination that the regulation is reasonably necessary to effectuate the purpose of the statute relied on as authority for the adoption of the regulation."

Thus, had the commissioner formally adopted a regulation providing that worker's compensation insurers were prohibited from entering into service contracts with their insureds, the result which he seeks in these proceedings, we would be required to determine whether the administrative record supported his determination that the regulation was reasonably necessary to avoid the *potential* for evil which the commissioner perceives. In aid of that determination we would have before us a record which would presumably enlighten us as to the problem and the commissioner's reasoning.

■ The record before us in these proceedings reveals nothing more than the terms of the contracts, the relevant statutes and the commissioner's claim that these contracts solely by virtue of their nature and the relationship of the parties *in fact* violate those statutes. Thus the scope of judicial review is, in accordance with *Securities Comm'n.* v. *Chenery Corp., supra*, to determine whether the commissioner's action is supported by the grounds upon which he relies.

On their face, the statutes relied on by the commissioner do not declare the agreements to be unlawful. The statutes only prohibit unlawful rebates, commissions or reduction of premiums. Thus it was incumbent for the commissioner in the trial court to proffer evidence that a violation occurred in this particular case.

The complete answer to all of the commissioner's contentions is in the findings of the trial court which are in turn supported by uncontroverted evidence to the effect that the agreements were not offered as an inducement to purchase insurance and that the payments were reasonable in comparison to the valuable services rendered to EBI by the two associations. We are bound by those findings. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920 [101 Cal.Rptr. 568, 496 P.2d 480].)

The trial court found that EBI would have been required to incur substantial expense in performing the billing and collection services with the superior results achieved by ACL and CSBE. If EBI had performed the services, the bad debt losses reasonably could have been expected to be substantially greater. EBI would not have been able to duplicate the ACL safety program, a unique and meaningful contribution to safety in logging which exceeded the minimum safety requirements mandated by Insurance Code section 11656.6, subdivision (a)(5).[5]

We discern no evil purpose or result from the simple fact of the relationship between the associations, the insureds and EBI.

The Attorney General, who represents the commissioner in this action, has previously issued opinions which are in contradiction to the position taken here.

---

[5]"An insurer may issue a workers' compensation policy insuring an organization or association of employers as a group if such organization or association complies with the following conditions: [¶] (a) Files with the commissioner or a licensed workers' compensation rating organization designated by him:... [¶] (5) A statement in writing undertaking to establish and maintain a safety committee which by education and otherwise will seek to reduce the incidence and severity of accidents;...."

█ In 9 Ops.Cal.Atty.Gen. 257 (1947), the Attorney General opined that a payment for administrative services to an association of insureds is not an unlawful rebate if (1) a change or discontinuance of the payment would not affect the insurance coverage, (2) the payment is not a cover for illegal commission-splitting or illegal payment of commission, and (3) the amount of the payment is a reasonable charge for the service.

In 17 Ops.Cal.Atty.Gen. 214 (1951) at pages 214, 216, the Attorney General also expressed an opinion on the computation of such payments by reference to a percentage of premiums as follows: "The question whether the payments constitute unlawful rebates depends upon whether or not they reasonably approximate the cost of the services actually received therefor . . . . it is possible that the premiums are so uniform in amount that the percentage charge is a reasonable approximation of the cost which conveniently eliminates burdensome and costly accounting procedure."

In the case at bench the agreements were all consistent with the criteria set forth in those opinions. █ The agreements themselves did not affect the underlying insurance coverage and the payments, as we have emphasized, were reasonable in relation to the services rendered. We also reiterate that there was no evidence that the agreements were a sham or a cover for illegal rebates or commissions.

The judgment is affirmed.

Fleming, Acting P. J., and Beach, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 19, 1980.