Filed 5/17/22  Schwindt v. Omar CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CHRISTINA SCHWINDT, | |
| Plaintiff and Appellant, | G059343, G059687 |
| v. | (Super. Ct. No. 30-2015-00774201) |
| AKBAR OMAR et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a judgment of the Superior Court of Orange County, Randall J. Sherman, Judge.  Affirmed.

Bohm Wildish & Matsen, Daniel R. Wildish and Charles H. Smith for Plaintiff and Appellant.

Stuart Kane, Eve A. Brackmann, Donald J. Hamman; Apex Lawyers, Shazad Z. Omar; Howard & Howard Attorneys and Ryan A. Ellis for Defendants and Appellants.

\*          \*          \*

Dr. Christina Schwindt lives in a Newport Beach community (the Bluffs) governed by a Homeowners Association (HOA). Schwindt's next door neighbors, Ruhksana and Akbar Omar, built a room addition onto their home. The HOA's Board of Directors (the Board) approved the room addition over Schwindt's objection.

Schwindt sued the Omars alleging the room addition violated the Bluffs' Covenants, Conditions, and Restrictions (CC&Rs). Schwindt alleged the addition was built in a prohibited patio area and it unreasonably interfered with her view. In an earlier bench trial, the court issued a mandatory injunction ordering the Omars to demolish their room addition and return their home to its original state. The Omars appealed.

This court reversed and remanded because the trial court's statement of decision failed to address whether the room addition was built in a prohibited patio area and whether the court found the Board's approval to be clearly arbitrary and capricious. (*Schwindt v. Omar et al.*, (Sept. 28, 2018, G054373) [nonpub. opn.].)

On remand, a different trial court judge conducted a second bench trial, which included a site visit. The court found the Omars built the room addition in a prohibited patio area, but the court found the Board was not arbitrary and capricious when it determined the addition did not unreasonably interfere with Schwindt's view. The court denied Schwindt's request for a mandatory injunction because "the hardship to [the Omars] in having to remove their improvements would outweigh the hardship to [Schwindt] in having to live with her slightly reduced view."

The Omars requested $377,134.32 in attorney fees. The trial court ordered Schwindt to pay the Omars $100,000.00 in attorney fees.

Schwindt filed an appeal from the trial court's denial of her requested injunction and an appeal from the award of attorney fees. Omar filed a cross-appeal, challenging the amount of attorney fees. This court consolidated the appeals.

We find no abuse of the trial court's discretion in any of its rulings. Thus, we affirm the judgment in all regards.

# I
## FACTS AND PROCEDURAL HISTORY

In 2004, Schwindt purchased a home in the Bluffs Community in Newport Beach. From the rear of the property, Schwindt's home features views of the back bay, to include views of the Pacific Ocean and Catalina Island.

In 2014, the Omars purchased a home next door to Schwindt's home. The Omars hired an architect, David Bailey, who drafted plans for an enclosed room addition. The room addition extended into the rear portion of the Omars' home; an area that had formerly been used by the prior owner as a patio.

Bailey submitted the building plans to the Bluffs' Architectural Control Committee (ACC), which initially rejected the proposed improvements. Bailey revised the plans at least twice and erected "story poles," indicating how the views of surrounding neighbors would be impacted. Bailey conducted a "view analysis" and determined the impact of the proposed room addition on Schwindt's view would be minimal. The ACC visited the property and eventually approved the plans for the (now smaller) room addition. Schwindt appealed the ACC's decision to the Board.

Schwindt and other homeowners attended a Board meeting. A long-time resident, Claude Whitney, who had participated in the drafting of the Bluffs' revised CC&Rs, attended the meeting. Whitney "specifically read the applicable CC&R's to the Board about . . . the prohibition of building on a patio." According to Whitney: "To our surprise, the Board went ahead, despite actual knowledge of the CC&R's . . . , they approved it."

Shortly thereafter, construction began on the Omars' room addition. Schwindt sent a letter to the Omars requesting alternative dispute resolution. The Omars did "not consent to any form of arbitration, mediation, or alternative dispute resolution."

In February 2015, Schwindt filed a complaint, alleging violations of the CC&Rs: 1) the Omars' room addition was being built in a prohibited patio area; and 2)

3

the structure unreasonably interfered with Schwindt's view. The complaint sought declaratory and injunctive relief, and "damages according to proof at the time of trial in excess of $25,000."

In March 2015, Schwindt, filed a motion for a temporary restraining order, seeking to prohibit the Omars "from continuing to build, construct, erect or otherwise install any room addition or other enclosed improvement on any portion of their patio area and/or future patio area." The trial court denied the temporary injunction but told the Omars they were proceeding at their own risk.

In July 2016, after a three-day bench trial, the trial court issued a mandatory injunction requiring the Omars "to promptly demolish the enclosed room addition and to restore the premises, insofar as is possible, to its condition prior to the construction of the enclosed room addition." The Omars appealed from the judgment.

In September 2018, this court reversed: "We direct the trial court on remand to directly address . . . within its statement of decision (whether the court found the decision of the Board to be clearly arbitrary and capricious, and whether the Omar's room addition was built on a prohibited patio easement)." (*Schwindt v. Omar et al.*, *supra*, G054373.)

In December 2019, the trial court (a different judge) presided over a three-day bench trial. After visiting the site, the court denied Schwindt's request for a permanent mandatory injunction (there was no longer a request for damages).

In August 2020, the Omars filed a motion requesting $377,134.32 in attorney fees. The trial court found the Omars to be the prevailing party and awarded $100,000.00 in attorney fees.[1]

---

[1] The trial court's proceedings and rulings will be covered in greater detail in the discussion section of this opinion.

4

II

DISCUSSION

Schwindt filed an appeal from the trial court's denial of her request for a permanent injunction, and later filed an appeal from the court's order granting the Omars attorney fees. Omar filed a cross-appeal challenging only the amount of the attorney fee award. This court consolidated the appeals.

In this opinion, we will address the: A) the trial court's denial of Schwindt's request for an injunction; and B) the attorney fee award to the Omars.

A. *The Trial Court's Denial of Schwindt's Request for an Injunction*

Schwindt argues the trial court erred when it denied her request for an injunction (the demolition of the Omars' room addition). We disagree.

A trial court's decision to deny a party's request for an injunction is reviewed for an abuse of its discretion. (*Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 771; *Husain v. California Pacific Bank* (2021) 61 Cal.App.5th 717, 727-728 ["'the trial court is better equipped than we are to fashion equitable relief and we afford it considerable discretion'"].)

"The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." [2] (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712, fns. omitted.)

---

[2] Schwindt argues the standard of review is de novo "since the court below erred in its interpretation of the CC&R's when it denied the injunction." As we shall discuss, we find the trial court did not err in interpreting the CC&Rs. In any event, that aspect of the court's ruling still falls within the scope of the broad abuse of discretion standard of review. (See *Haraguchi v. Superior Court*, *supra*, 43 Cal.4th at pp. 711-712.)

In this part of the discussion, we will: 1) review relevant legal principles; 2) summarize the trial court proceedings; and 3) analyze the law as applied to the facts.

### 1. Relevant Legal Principles

Generally, "while the right to injunctive relief under proper circumstances is well established, its issuance is largely discretionary with the court and depends upon a consideration of all the equities between the parties. No hard and fast rule can be adopted which will fit all cases and hence each must be determined upon its own peculiar facts." (*Pahl v. Ribero* (1961) 193 Cal.App.2d 154, 161.)

This "balancing of the equities" legal doctrine has been known by several names over the years, including "a balancing of the conveniences," "a balancing of the equities and hardships," and "the relative hardship doctrine." (See *Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 526; *Associated Cal. Loggers, Inc. v. Kinder* (1978) 79 Cal.App.3d 34, 38-39; *Hirshfield v. Schwartz*, *supra*, 91 Cal.App.4th at p. 758.)

"Under the relative hardship test, the trial court must identify the competing equities underlying each party's position. It then must balance the relative hardships of granting or denying an injunction to remove encroachments from the plaintiff's property." (*Hirshfield v. Schwartz*, *supra*, 91 Cal.App.4th at pp. 761-762.)

"An injunction that requires no action and merely preserves the status quo" is known as a "prohibitory injunction"; "while an injunction requiring the defendant to take affirmative action" is known as a "mandatory injunction." (*Daly v. San Bernardino County Bd. of Supervisors* (2021) 11 Cal.5th 1030, 1035.) Generally, "courts give greater scrutiny to mandatory injunctions." (*People ex rel. Brown v. iMergent, Inc.* (2009) 170 Cal.App.4th 333, 343.)

CC&Rs are interpreted according to the principles applicable to all written contracts. (*Westrec Marina Management, Inc. v. Arrowood Indemnity Co.* (2008) 163 Cal.App.4th 1387, 1391-1392.) "The mutual intention of the contracting parties at the

6

time the contract was formed governs. [Citations.] We ascertain that intention solely from the written contract, if possible, but also consider the circumstances under which the contract was made and the matter to which it relates. [Citations.] We consider the contract as a whole and construe the language in context, rather than interpret a provision in isolation. [Citation.] We interpret words in a contract in accordance with their ordinary and popular sense, unless the words are used in a technical sense or a special meaning is given to them by usage. [Citation.] If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs." (*Ibid.*)

### 2. *Trial Court Proceedings*

In her complaint, Schwindt alleged the Omars violated the CC&Rs by building their room addition in a prohibited patio area and the home improvement unreasonably interfered with her view.

As to patio areas, the CC&Rs provide:

"No Owner shall build, construct, erect or otherwise install any Proposed Improvement which requires a Building Permit on any portion of his Patio Area and/or Future Patio Area without complying with the provisions of this Article and without first obtaining a Lot Line Adjustment . . . . Notwithstanding the foregoing, the [ACC] shall not have any right, power or authority to approve, and no Owner shall build, construct, erect or otherwise install any room addition or other 'enclosed' Improvement on any portion of his Patio Area and/or Future Patio Area."

As to views, the CC&Rs provide:

"No owner shall build, construct or erect any Improvement or otherwise allow any Improvement located on such Owner's Residential Estate to unreasonably interfere with the passage of light and air to, or the view from, any other Residence in the Project." "The [ACC] shall not approve any Proposed Improvement which would unreasonably obstruct the view from any other Residence in the Project."

7

"All decisions of the Board shall be conclusive on the issue and binding on the parties unless such decision is clearly arbitrary and capricious."

During the bench trial, Schwindt testified the room addition "has blocked the . . . entire left side of my home which was -- actually the side that's oriented towards the Catalina Island and ocean view, so it was the most important part of the view . . . ."

Whitney, the longtime resident, testified that although a person may have an ownership interest in "the patio . . . they still couldn't build on it." Whitney said the Omars' room addition constituted a "clear encroachment on the patio." The person who previously owned the Omars' home testified the enclosed room addition extended into an area that he previously used as a patio. A construction expert similarly testified the Omars' room addition was built in a patio area in violation of the CC&Rs, under the common sense understanding of the word patio.

Bailey, the Omars' architect, testified the room addition did not extend into a prohibited "'Future Patio Easement Area." Bailey said the story poles were erected based on feedback from the ACC, and the plans were revised to reduce the depth of the project based "in response to some of the neighbors comments about the addition." In preparation for the Board meeting, Bailey prepared a "view analysis" based on the views from the neighbors' homes. Bailey said Schwindt's view was reduced about seven to 10 percent.

A Bluffs' Board member testified the terms "Future Patio Area" and "Future Patio Area Easement" are used interchangeably in the CC&Rs. The Board member voted to approve the Omars' proposed room addition. The Board member lived near the Omars' home and had visited the site several times while the story poles were erected. The Board member concluded Schwindt's view "would not be unreasonably obstructed."

8

An ACC member testified the term "patio area" is not defined in the CC&Rs.[3] The ACC member said he had visited the Omars' property to "evaluate the concerns to the adjacent neighbors, and then ultimately when the story poles are erected, to evaluate the concerns of the neighbors with physical evidence in place to understand whether it's reasonable or unreasonable or what other impact it may have." The ACC member testified: "By the time the second go-around went and story poles were reviewed by the committee, the committee was satisfied that it was not unreasonable. Not unreasonable view obstruction."

After the close of evidence, "the Court concludes that the CC&Rs unambiguously prevents building in a patio area." The court further concluded it was "clearly arbitrary and capricious for the Board to conclude otherwise."

After the site visit, the court found "the view of the back bay water was not affected by the development. The view of Catalina, which was obstructed that day by clouds, that wasn't obstructed by the development. The view of the Pacific Ocean was not obstructed by the development. The view that got obstructed was of -- I guess it's called the bluffs which is kind of like the side of the mountain." The court concluded: "It would not be clearly arbitrary and capricious for the Board of Directors to have concluded that there was no unreasonable affect on [Schwindt's] view."

As far as the requested relief, the court said: "So this case is not about money damages. It's about an injunction. Whenever the court issues an injunction, the court has to balance the hardships. And mandatory injunctions typically have a more stringent test than prohibitory injunctions. And in this case, it's not necessarily true that just because an owner violates the CC&Rs by building in a prohibited patio area, that that

_____

[3] At oral argument in this court Omars' counsel argued the phrase "patio area" is defined in various provisions of the CC&Rs. However, we note that in the "Definitions" section of the CC&Rs (Article I), the phrase "patio area" is not among the several words or phrases that is specifically listed.

9

has an adverse effect or significant adverse effect on one of the homeowners."

The court concluded, "I do think it really comes down to whether [Schwindt's] view was significantly impaired and that the patio area, as a legal issue for the decision in this case, kind of becomes somewhat moot.

"I mean, the fact that the CC&Rs specifically prohibit unreasonably obstructing a view kind of gives you the standard for the court to use on this hardship. It's kind of the same thing even though it's somewhat coincidental because it states the hardship was a loss of view. And so if the court were to conclude that the loss of view was unreasonably affected, then the court would find that that's a significant hardship to the [Schwindt]. But in this case, the court is concluding that the hardship to the [Omars] outweighs the hardship to [Schwindt] in that the cost of tearing down what they built, even it [was], at the time of the denial of preliminary injunction, is a greater hardship than what is a somewhat minimal view loss for [Schwindt].

"You know, I appreciate the fact that the plaintiff didn't want her view impeded whatsoever, but the standard in the CC&Rs is unreasonably, and the court of appeals mandate to the superior court that the court must go with the HOA's conclusion unless it is clearly arbitrary and capricious. I mean, not even arbitrary and capricious, but clearly arbitrary and capricious, that based on these facts mandates a ruling in favor of the [Omars] on the injunction issue.

"You know, if this was a case about money and there was some quantitative showing of view loss or property value loss, I could get into that, but that's not part of this case. [¶] So judgment will be for the [Omars]."[4]

---

[4] The court later incorporated its oral ruling into its written statement of decision.

10

### 3. Analysis and Application

It is apparent from the trial court's cogent ruling that it was not arbitrary or capricious when it applied the law to the facts. The court was aware of the relevant case law. (See, e.g., *Kahn v. Price*, *supra*, 69 Cal.App.5th at pp. 241-242.) The court was also aware of the underlying facts; indeed, the court conducted a three-day bench trial, which included a site visit to see the impact of the room addition on Schwindt's view.

The trial court properly identified the competing equities to the parties: the burden of tearing down the room addition to the Omars, versus the loss of view to Schwindt. (See, e.g., *Hirshfield v. Schwartz*, *supra*, 91 Cal.App.4th at pp. 761-762.) The court then concluded the "greater hardship" to the Omars outweighed the "minimal" hardship to Schwindt and denied her request for an injunction that would have required the destruction of the Omars' room addition.

While we may have come to a different decision, we find no abuse of the trial court's discretion. Thus, we affirm the court's ruling.

Schwindt argues this court's opinion in *Ekstrom v. Marquesa at Monarch Beach Homeowner's Assn.* (2008) 168 Cal.App.4th 1111, 1121 (*Ekstrom*), compels a different result. We disagree.

In *Ekstrom*, a residential beach community Association's CC&Rs provided: "All trees . . . shall be trimmed by the Owner of the Lot upon which they are located so that they shall not exceed the height of the house on the Lot; provided, however, that where trees do not obstruct the view from any of the other Lots in the Properties . . . they shall not be required to be so trimmed." (*Ekstrom*, *supra*, 168 Cal.App.4th at pp. 1114-1115.) The Association routinely enforced the CC&R by ordering homeowners to trim their trees; however, the Association did not enforce the CC&R as to palm trees because the Board determined "the aesthetic benefit to the entire community from the maturing and now very lush looking palm trees outweighed the value of preserving views of just a few homeowners." (*Id*. at p. 1116.) Some plaintiffs whose views were obstructed by the

11

palm trees sued for injunctive relief. The trial court granted the mandatory injunction requiring the Association to enforce the tree trimming CC&R, even though the trimming (or topping) of the palm trees would result in their destruction. (*Id*. at pp. 1120-1121.) This court affirmed the ruling of the trial court. (*Id*. at p. 1127.)

In this case, the trial court found the Board's approval of the Omars' room addition in a prohibited patio area was clearly arbitrary and capricious.[5] Schwindt appears to be arguing that under the holding of *Ekstrom*—as a pure issue of law—the trial court was required to issue an injunction requiring the Omars to demolish their room addition and return their home to its original state. We disagree. In *Ekstrom*, the tree trimming CC&R did not give the Association the discretion to allow any trees to obstruct any portion of the view from any of the community's lots. Conversely, the improvement provision in the Bluffs' CC&Rs gave the Board the discretion to approve a proposed home improvement, unless the "Proposed Improvement which would *unreasonably* obstruct the view from any other Residence in the Project." (Italics added.)

Here, after visiting Schwindt's home, the trial court found the Board was not arbitrary and capricious when it determined that Schwindt's view was not *unreasonably* obstructed by the Omars' room addition. Thus, the trial court was not required to issue a mandatory injunction as the trial court did in *Ekstrom*.

Schwindt quotes *Dolan-King v. Rancho Santa Fe Assn.* (2000) 81 Cal.App.4th 965, 975, for the proposition: "Restrictions are evaluated for reasonableness in light of 'the restriction's effect on the project as a whole,' not from the perspective of the individual homeowner. [Citations.] Accordingly, courts do not conduct a case-by-case analysis of the restrictions to determine the effect on an individual homeowner [but

---

[5] The Omars argue the trial court was mistaken as to "patio area" portion of its ruling. But they did not file a cross-appeal as to this issue. (See California Rules of Court, rule 8.406(b).) In any event, we agree with the trial court that the issue is essentially moot given the court's denial of Schwindt's requested injunction.

12

rather] must consider the reasonableness of the restrictions by looking at the goals and concerns of the entire development." But the quoted portion of the published opinion concerns the presumptive reasonableness of an Association's land use restrictions. The quotation certainly does not stand for the notion that a trial court must always issue a mandatory injunction every time a homeowner violates a CC&R, regardless of the seriousness or trivialness of the violation, or the court's balancing of the equities.

Schwindt also argues "the Superior Court's judgment left Schwindt wronged without a remedy." We disagree.

At the time of the trial, Schwindt was no longer seeking damages and was only requesting declaratory and injunctive relief. As the trial court stated: "You know, if this was a case about money and there was some quantitative showing of view loss or property value loss, I could get into that, but that's not part of this case."

In other words, there may have been a remedy available to Schwindt—as the trial court seemed to suggest—but we will never know because Schwindt took the possibility of money damages off the table prior to trial. (See *Vlahovich v. Cruz* (1989) 213 Cal.App.3d 317, 323 ["A litigant will be held to his choice of remedies"].)

In sum, this case is not about a trial court judge ignoring a requirement of the CC&Rs (the patio building restriction). Indeed, the court recognized the Omars' violation. But then the court deftly used another CC&R (the reasonable view restriction) to accurately weigh the equities because Schwindt's action was only brought in equity.

B. *The Attorney Fee Award*

In this case: 1) Schwindt contends the trial court erred by awarding the Omars any attorney fees; and 2) the Omars contend the court erred by reducing their attorney fee award. We shall analyze the parties' contentions.

13

*1. The trial court did not err by awarding attorney fees to the Omars.*

"In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees in addition to other costs." (Civ. Code, § 1717, subd. (a).)[6]

"In an action to enforce the governing documents [CC&Rs], the prevailing party shall be awarded reasonable attorney's fees and costs." (§ 5975, subd. (c).)

Generally, "the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract . . . ." (§ 1717, subd. (b)(1).)

"A trial court has broad discretion in determining which party has obtained greater relief on the contract, and we will not disturb such a determination on appeal absent a clear abuse of discretion." (*In re Tobacco Cases I* (2013) 216 Cal.App.4th 570, 578.) "We are required to uphold a reasonable ruling even if we may not have ruled the same way and a contrary ruling would also be sustainable." (*Ibid.*)

The Bluffs' CC&Rs provide: "In the event the Declarant, the Association or any Owner shall commence legal proceedings to enforce any of the covenants and/or terms of this Declaration, or to declare rights and/or obligations arising hereunder, . . . *the prevailing party in such action* shall be entitled to recover its costs of suit *and reasonable attorneys' fees as may be fixed by the Court*." (Italics added.)

Here, after the trial court's judgment on the merits, the Omars filed a motion for determination of the prevailing party and $377,134.32 in attorney fees, which was supported by numerous declarations and billing records. Schwindt filed an opposition, arguing "the 'mixed results' herein support a determination of 'no party

---

[6] Further undesignated statutory references are to the Civil Code.

14

prevailing' under Civil Code Section 1717."  Schwindt also argued the requested award should be denied or lowered because the Omars refused to participate in alternative dispute resolution.  The Omars filed a reply.

After hearing oral argument, the trial court awarded the Omars $100,000.00 in attorney fees.  The court found:  the Omars "undoubtedly were the prevailing parties, because they ultimately received a Judgment in their favor."

Since Schwindt was unsuccessful in obtaining a mandatory restraining order to remove the room addition, and the trial court found that impact on Schwindt's view was minor, we agree with the court's ruling that the Omars were the prevailing party.  Thus, we find no abuse of the court's discretion.

Schwindt argues the trial court found the Omars built their room addition in a prohibited patio area, and therefore they did not achieve a complete victory.  Schwindt cites various opinions for the proposition that the trial court should have found there was no prevailing party.  (See, e.g., *Marina Pacifica Homeowners Assn. v. Southern California Financial Corp.* (2018) 20 Cal.App.5th 191, 205-206 [court of appeal affirmed ruling of the trial court that there was no prevailing party for purposes of attorney fees because neither party achieved a complete victory].)

While we may have affirmed the trial court's designation of no prevailing party (had that been the court's ruling), such a finding is not required under section 1717, or any cases cited by Schwindt.  The court was well within its discretion to designate the Omars as the prevailing party, and we will not disturb that finding on appeal.

*2.  The trial court did not err by reducing the attorney fee award.*

"'The trial court has broad discretion to determine the amount of a reasonable fee, and the award of such fees is governed by equitable principles.'"  (*Ellis v. Toshiba America Information Systems, Inc*. (2013) 218 Cal.App.4th 853, 881-882.)

"In an enforcement action in which attorney's fees and costs may be

15

awarded, the court, in determining the amount of the award, may consider whether a party's refusal to participate in alternative dispute resolution before commencement of the action was reasonable." (§ 5960.)

Trial courts ordinarily use the lodestar method to calculate an attorney fee award "'by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier" to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented.'" (*Laffitte v. Robert Half Internat. Inc*. (2016) 1 Cal.5th 480, 489.)

In this case, the trial court ruled: "This case went through a bench trial, a reversal on appeal, and a new trial with a new judge. [The Omars] seek attorneys' fees of $377,134.32, which includes $59,465.32 for the appeal. But if the parties had arbitrated, they would have had a binding decision the first time, rather than incur more fees on an appeal and a retrial. Thus, pursuant to Civil Code §5960, this court will 'consider whether a party's refusal to participate in alternative dispute resolution before commencement of the action was reasonable', [and] conclude that [the Omars'] refusal to arbitrate was not reasonable, and award [the Omars] only the court's best estimate of the fees [they] would have incurred if they had arbitrated this dispute."

Here, we do not find the amount of the attorney fee award to be clearly wrong, so we find no abuse of discretion. (See *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 ["The '"experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong"'"].)

On appeal, the Omars argue because Schwindt's complaint requested $25,000.00 in damages and emergency injunctive relief, the Davis-Sterling Common Interest Development Act, which allowed for the lowering of the attorney fee award

16

based on the refusal to arbitrate, does not apply.  (See § 4000 et seq.)  But this specific argument and other related issues were not raised in the trial court, so they have been forfeited for purposes of appeal.  (See *Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417 ["As a general rule, 'issues not raised in the trial court cannot be raised for the first time on appeal'"].)

Finally, the Omars argue "the trial court was required to follow the 'lodestar' approach."  However, the trial court was not required to provide a statement of decision.  (See, e.g., *Ketchum v. Moses*, *supra*, 24 Cal.4th at pp. 1140-1141.)  Nor was the court required to "otherwise detail its fealty to the law, which we presume." (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1323; citing Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"].)

To reiterate and conclude, we find no abuse of the trial court's discretion in any of its rulings.


III

DISPOSITION

The judgment is affirmed.  Neither party shall be awarded costs on appeal.



MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


GOETHALS, J.


17